UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

WALTER LEE JONES,

                Plaintiff,                Case No. 1:07-cv-786

v.                                          Honorable Gordon J. Quist

PATRICIA CARUSO et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On September 26, 2007, this Court ordered service of Plaintiff's complaint on Defendants. On December 28, 2007, Defendants filed a motion for partial summary judgment (docket #22) on the ground that Plaintiff failed to exhaust his available administrative remedies. In response, Plaintiff filed a motion to strike affirmative defenses (docket #23) a motion to amend his motion to strike (docket #27). Defendants filed a reply to Plaintiff's motion (docket #29). Plaintiff subsequently filed a "rebuttal brief in opposition of Defendants' reply" (docket #30). Upon review, I recommend that Defendants' motion for partial summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted in part and denied in part. I further recommend that the Court deny Plaintiff's motion to strike and motion to amend his motion to strike.

**Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative

defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

Plaintiff is incarcerated in the Ionia Maximum Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated at the Bellamy Creek Correctional Facility (IBC), the Riverside Correctional Facility (RCF), and the Richard Handlon Correctional Facility (MTU).  Plaintiff sues Michigan Department of Corrections (MDOC) Director Patricia Caruso, IBC Warden Kenneth McKee, IBC Assistant Resident Unit Manager (ARUM) Lisa English, IBC Acting ARUM (unknown) Perry, RCF Warden Carmen Palmer, RCF ARUM Chris Bouck, MTU Warden John Prelesnik and MTU ARUM Dawn Lovett.

Plaintiff's complaint concerns his exposure to Environmental Tobacco Smoke (ETS).  Plaintiff requested tobacco-free housing when he was transferred to IBC on December 29, 2005.  He was placed with a non-smoking cell mate, but was in a housing unit with smokers.  After he was

3

placed on "unemployable status," he was moved to a cell with a smoker who allegedly smoked fifty non-filtered cigarettes a day. Plaintiff claims that Defendants McKee, English and Perry refused his requests to be moved to tobacco-free housing. He further contends that the no smoking policy was rarely enforced at IBC and that both prisoners and staff violated the policy. Plaintiff ultimately was placed in tobacco-free housing on June 19, 2006. Plaintiff requested a medical appointment because he was experiencing shortness of breath, burning sensation of the lungs, uncontrollable coughing and sneezing. On August 25, 2006, the doctor diagnosed Plaintiff with asthma and bronchitis and prescribed him medications for his condition.

On October 17, 2006, Plaintiff was transferred to RCF. While at that facility, Plaintiff had a special accommodation notice which required him to be placed in a smoke-free environment. Plaintiff claims that prisoners smoked in the housing unit even though it was designated for non-smoking prisoners. Plaintiff claims that the smoke caused him to suffer nausea, respiratory complications and a burning sensation in his nasal cavities. Plaintiff further claims that Defendants Palmer and Bouck intentionally house smokers in areas designated for non-smokers when there are not enough non-smokers to fill bed space designated for non-smokers. According to Plaintiff, the no smoking policy was rarely enforced at RCF and Defendants made no attempt to remove prisoners found smoking in the smoke-free housing unit.

Plaintiff was transferred to MTU on February 8, 2007. Despite his special accommodation, Plaintiff was placed in a housing unit with smokers. As a result of his exposure to high levels of ETS, Plaintiff requires prescription inhalers to assist with his breathing.

Plaintiff alleges that all of the named Defendants were deliberately indifferent to his serious medical needs by placing him in housing units with smokers. Plaintiff claims that Defendants failed to enforce the no-smoking policy and failed to remove smoking prisoners from

4

the non-smoking designated housing units. Plaintiff asserts that his continued exposure to ETS has exacerbated his medical condition, causing him pain and suffering. Plaintiff also alleges that Defendants Prelesnik and Lovett retaliated against him for filing grievances by transferring him to a facility that was not known to provide smoke-free housing.

## Discussion

### I. Applicable Law

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases. *Woodford*, 548 U.S. at 92. In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999). "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ." *Id.* at 848 (citation omitted; emphasis in original). In habeas, the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default. *Woodford*, 548 U.S. at 92. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.") Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

II.     **MDOC Grievance Policy**

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

    III.    **Grievances**

        A.    MTU-07-03-249-03c (docket #22-3)

On March 9, 2007, Plaintiff filed a Step I grievance at MTU regarding his exposure to second-hand smoke. He stated in part:

> This grievance is initiated because grievant who is a documented non-smoker and currently has a[n] MDOC Medical Special Accommodation Notice, which requires that he be housed in a Smoke-Free Environment, is currently being exposed to second-hand smoke which exacerbates his present medical condition (asthma).
>
>                 \*\*\*
>
> Presently, Grievant's Eighth Amendment right to be free from cruel and unusual punishment is being violated where both the MTU and MDOC Administration[s] have repeatedly failed to house Grievant in a prison unit free from ETS thereby exposing Grievant to an unreasonable risk of harm to his health which constitutes deliberate indifference to his serious medical need. Grievant is housed in Unit D, which is a single wing (lower wing only) which purported to house all non smoking prisoners. However[,] Grievant is constantly being bombarded by those who smoke in the Unit's common areas, that is: the card room, T.V. rooms, bathrooms and most disturbing, the Unit shower areas.

Plaintiff specifically named Defendants Caruso and Prelesnik in his Step I grievance. In his Step I response, Resident Unit Manager J. Payne acknowledged that some prisoners break the non-smoking rules, but maintained that staff are constantly trying to enforce the rules by issuing misconduct reports when they observe prisoners smoking is areas designated as non-smoking.

8

Plaintiff appealed his grievance to Steps II and III.  Plaintiff did not file any other relevant grievances at MTU.

Defendants concede that Plaintiff exhausted his claim against Defendant Prelesnik, but contend that his claim against Prelesnik is exhausted only for the period from March 8 to March 19, 2007.  Plaintiff was incarcerated at MTU from February 9 to March 19, 2007.  In his Step I grievance, Plaintiff listed March 8 as the "Date of Incident."  Defendants argue that Plaintiff is precluded from arguing or claiming that he was subjected to ETS at MTU from February 9 to March 7, 2007, because he filed no prison grievance during that time period.  Defendants do not cite any authority in support of their argument.

In his response brief, Plaintiff discusses the Fifth Circuit's decision in *Johnson v. Johnson*, 385 F.3d 503, 519 (5th Cir. 2004).  In that case, a former Texas prisoner brought a § 1983 action against prison officials claiming that they failed to protect him from repeated sexual assaults over a period of eighteen months in violation of his Eighth Amendment rights.  Under the grievance policy for Texas prisoners, a grievance must be filed within fifteen days of the incident bring grieved.  The Fifth Circuit held that the prisoner did not exhaust any claims that arise from events that occurred more than fifteen days before his grievance.  *Id.* at 519.  The court explained:

> While it is true that the conditions that Johnson suffered both before and after the grievance were of the same general character, to permit the March 2001 grievance to reach back to events that transpired up to six months earlier would effectively negate the state's fifteen-day rule and frustrate the prison system's legitimate interest in investigating complaints while they are still fresh.  That a condition continues does not excuse the failure to file a grievance earlier.

*Id.*  Having said that, the court rejected the defendants' argument that the prisoner had not exhausted any claims that arose from events that occurred after the March 2001 grievance.  The court concluded that the March 2001 grievance put the defendants on notice of the fact that the prisoner

9

was being subjected to repeated assaults and stated that the prisoner was not required to file repeated grievances reminding prison officials that he remained subject to attack. *Id.* at 520-21.

The Sixth Circuit has not ruled on this issue. At least one district court has distinguished *Johnson* in a case concerning the denial of care for an ongoing medical claim. *See Ellis v. Vadlamudi*, __ F. Supp. 2d __, 2008 WL 2705503, at *6 (E.D. Mich. July 10, 2008). The district court found that Johnson did not provide guidance in the context of the denial of treatment for a chronic medical condition, because *Johnson* involved discrete sexual assaults that should have prompted the prisoner to invoke the administrative complaint system promptly. Like *Ellis*, Plaintiff's claim involves an ongoing health issue, not a series of discrete events.

Moreover, *Johnson* was decided before the Supreme Court announced in *Jones v. Bock* that exhaustion is an affirmative defense. *See Jones*, 127 S. Ct. at 919-21. It was clear from the content of the grievance that it concerned ongoing exposure to ETS. For example, Plaintiff alleged in his grievance that "MTU and MDOC Administration have repeatedly failed to house [him] in a prison unit free from ETS . . ." *(See* Ex. 1, MTU-07-03-249-03c (docket #22-3)). While his grievance alleged an ongoing violation of his Eighth Amendment rights, it was not rejected as untimely at any stage of the grievance process. Under the rules of procedural default, prison officials must actually rely upon the procedural rule to bar review of the grievance. *See Johnson*, 418 F.3d at 1159; *Spruill*, 372 F.3d at 222. Because Plaintiff's grievance was not rejected as untimely, Defendants cannot establish that Plaintiff failed to satisfy the exhaustion requirement. *See Griswold v. Morgan*, 317 F. Supp.2d 226, (W.D.N.Y. 2004) (holding that a grievance alleging deliberate indifference over a period of four years satisfied the exhaustion requirement when it was considered on the merits at the final step of the grievance process without any reference to the fact of its untimeliness.)

Defendants also argue that Plaintiff's claim against Prelesnik should be considered exhausted only for purposes of Plaintiff's exposure to ETS while he was incarcerated at MTU. I agree. Thus, Plaintiff exhausted his ETS claim against Warden Prelesnik only for the period that Plaintiff was incarcerated at MTU.

Defendants similarly concede that Plaintiff exhausted his ETS claim against Defendant Caurso, but argue that Plaintiff's claim against Caruso should be considered exhausted only for the period from March 8-19, 2007. For the same reasons set forth above, Defendants' argument must fail. Furthermore, as the Director of the MDOC, Caruso is not associated with one particular facility. Plaintiff was not required to file a new grievance against Caruso every time he was transferred to a new prison. Plaintiff's grievance against Caruso while he was incarcerated at MTU put her on notice of his claim of ongoing exposure to ETS.

Other than Warden Prelesnik, the only other MTU employee named in the complaint is ARUM Lovett. Defendants argue Plaintiff failed to exhaust his administrative remedies against Lovett because Lovett was not named in any grievance. Plaintiff does not allege that he filed any other grievances besides those provided by Defendants. None of those grievances mention Defendant Lovett or make a claim of retaliation. Therefore, Defendant Lovett will be dismissed from this action without prejudice.

            B.     RCF-07-02-116-03c (docket #22-4)

On February 1, 2007, Plaintiff wrote a Step I Grievance at RCF regarding his exposure to EST in his housing unit. Plaintiff referred to RCF "staff" and "administration" in his Step I grievance, but does not name any specific individuals. In the Step I response, Defendant Bouck indicated that Plaintiff was not interviewed because had been transferred to another facility. Bouck further stated that prison staff were properly dealing with prisoners found to be in violation

11

of the smoking rules. Plaintiff filed a Step II appeal complaining that Defendant Bouck was not an appropriate person to investigate his grievance because Bouck was directly responsible for the fact that prisoners were smoking in a housing unit designated for non-smoking prisoners. Plaintiff's Step II appeal was denied. Plaintiff appealed to Step III, which was denied.

As an initial matter, Defendants failed to provide a copy of Plaintiff's Step III grievance appeal. Without the Step III appeal, the Court cannot fully assess whether Defendants' have met their burden of proof. Because Defendants failed to provide all of the grievances and grievance responses for RCF-07-02-116-03c, their motion should be denied with respect to RCF Defendants Bouck and Palmer. Even if Defendants had provided the full record, their motion would be denied as to the RCF Defendants as set forth below.

Defendants first argue that Plaintiff failed to exhaust his administrative remedies against the RCF Defendants because he did not name them in the Step I grievance. While the grievance policy provides that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included," *see* 03.02.130 at ¶ T, it does not specifically require that the names of those being grieved appear in the Step I grievance. Even if the policy could be construed as requiring the prisoner to name all of those being grieved at Step I, none of the grievance respondents rejected the Step I grievance on the ground that Plaintiff failed to name any specific individuals in his Step I grievance. Defendants insist that "a person who is never named in the prisoner's grievance would certainly have no notice that they might later be sued and would have no idea that a grievance had ever been filed, and, so, they could not possible raise legal defenses to a future lawsuit in a grievance response." (Def.'s Reply Br., 3.) However, in a situation such as this, where no individuals are named in the Step I grievance, prison officials are on notice that the

12

prisoner did not include names in the Step I grievance.[2] Because prison officials did not invoke the default, they cannot show that Plaintiff failed to exhaust his administrative remedies against RCF Defendants Bouck and Palmer.

While Plaintiff was incarcerated at RCF from October 17, 2006 to February 9, 2007, Defendants contends that Plaintiff's claims should be considered exhausted from January 27, 2007, the "Date of Incident" listed in Plaintiff's Step I grievance, until February 9, 2007, the date Plaintiff was transferred out of the facility  For the reasons set forth above, I reject Defendant's argument. Thus, Plaintiff exhausted his claims against RCF Defendants Bouck and Palmer for the entire period that he was incarcerated at RCF.

          C.        IBC-06-03-984-03c (docket #22-5)

On March 26, 2006, while he was his incarceration at IBC, Plaintiff filed a Step I grievance complaining that he had been forced to share a cell with a smoker. Plaintiff claimed that he was told that he would be charged with a misconduct and taken to segregation if he refused to share a cell with a smoker. Plaintiff did not mention any specific individuals in the Step I grievance. In response to Plaintiff's grievance, Defendant English wrote a memorandum on March 31, 2006, stating that Plaintiff declined to sign a tobacco-free housing form during orientation, did not request tobacco-free housing and signed a tobacco-free waiver in July 2005, stating that he did not want to be placed in tobacco-free housing. In his Step II grievance appeal, Plaintiff disputed English's version of the facts. Plaintiff further stated that even if he had declined tobacco-free housing in the past, his present request for tobacco-free housing should be honored. In addition to mentioning

---

[2]The outcome would be different in a case where one or more individuals is named in the Step I grievance. In such a case, prison officials could not anticipate that the prisoner would sue other individuals not named in the grievance. For example, when Plaintiff named Defendants Caruso and Prelesnik at Step I of Grievance No. RCF-07-02-116-03c, prison officials could not anticipate that Plaintiff later would also sue Defendant Lovett.

Defendant English, Plaintiff requested that Warden McKee "remedy this inhumane treatment by having Grievant expeditiously removed from such an [sic] health hazardous environment." Plaintiff's grievance was denied at Steps II and III.

Again, Defendants failed to provide a copy of Plaintiff's Step III grievance appeal. As a result, the Court cannot determine whether Defendants' have met their burden of proof. Because Defendants failed to provide all of the grievances and grievance responses for IBC-06-03-984-03c, their motion should be denied with respect to IBC Defendants McKee, English and Perry. Even if Defendants had provided the full record, they fail to meet their burden of proof. While Defendants argue that Plaintiff failed to name any of the IBC Defendants in the Step I grievance, Plaintiff's grievance was not rejected for that reason at any step of the grievance process. As discussed above, the grievance policy does not explicitly require the names of the individuals involved to be included in the Step I grievance. Furthermore, prison officials were on notice that Plaintiff did not name any individuals in his Step I Grievance, but did not reject the grievance on that ground. Consequently, Defendants cannot show that Plaintiff failed to exhaust his claims against IBC Defendants McKee, English and Perry.

Defendants further argue that Plaintiff's ETS claim against the IBC Defendants should be considered exhausted only from the "Date of Incident" listed in his Step I grievance, until he was transferred out of the facility. As previously discussed, Defendants argument is without merit. Consequently, Plaintiff exhausted his claim against Defendants McKee, English and Perry for the entire period that he was at IBC.

## IV. **Retaliation claim**

Defendants argue that Plaintiff failed to raise his retaliation claim in any prison grievance, and, thus, failed to exhaust his retaliation claim. Plaintiff does not allege that he filed any grievances other than the three provided by Defendants, which do not include a claim of retaliation against Defendants Prelesnik and Lovett. Because Plaintiff failed to exhaust his retaliation claim, it will be dismissed without prejudice.

## V. **Motion to Strike**

In his motion to strike and motion to amend his motion to strike, Plaintiff moves to strike Defendants' affirmative defense pursuant to FED. R. CIV. P. 12(f), which provides that "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court may act *sua sponte* or upon the motion of a party. FED. R. CIV. P. 12(f)(1)-(2). Motions to strike affirmative defenses under Rule 12(f) are addressed to the court's discretion, although they are generally disfavored. *Ameriwood Industries Int'l Corp. v. Arthur*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997). Such motions are to be considered carefully and not freely granted; striking an affirmative defense "is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1442 (W.D. Mich. 1989). An affirmative defense is insufficient "if, as a matter of law, the defense cannot succeed under any circumstances," and a motion to strike is appropriate "where it will eliminate spurious issues before trial and streamline the litigation." *Ameriwood*, 961 F. Supp. at 1083; *Kelley*, 714 F. Supp. at 1442.

Plaintiff's motion to strike clearly is without merit. The failure to exhaust administrative remedies is an affirmative defense under the PLRA. *See Jones*, 127 S. Ct. at 919-21. Thus, as a matter of law, Defendants could succeed on their motion for summary judgment based

15

on exhaustion of administrative remedies. Consequently, I recommend that the Court deny Plaintiff's motion to strike. I further recommend that his motion to amend his motion to strike be denied as moot. Notwithstanding my recommendations on the merits of Plaintiff's motions, I considered the arguments set forth in these motions to the extent they are responsive to Defendants' motion for summary judgment.

### **Recommended Disposition**

For the foregoing reasons, I recommend that Defendants' motion for partial summary judgment based on exhaustion of administrative remedies (docket #22) be granted in part. Defendants' motion should be granted as to Defendant Lovett, who should be dismissed from this action without prejudice. In addition, Plaintiff's retaliation claim should be dismissed for lack of exhaustion. Defendants' motion should be denied with regard to Plaintiff's Eighth Amendment ETS claim against Defendants Caruso, McKee, English, Perry, Palmer, Bouck and Prelesnik.

I further recommend that Plaintiff's motion to strike Defendants' affirmative defenses (docket #23) and Plaintiff's motion to amend his motion to strike (docket #27) be denied.


Dated:  September 2, 2008                          /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within eleven (11) days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).