UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

WALTER LEE JONES,

              Plaintiff,              Case No. 1:07-cv-786

v.                                         Honorable Gordon J. Quist

PATRICIA CARUSO, *et al.*,

              Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 73).

    **I.**    **Plaintiff's complaint**

The court previously summarized plaintiff's claims as follows:

Plaintiff is incarcerated in the Ionia Maximum Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated at the Bellamy Creek Correctional Facility (IBC), the Riverside Correctional Facility (RCF), and the Richard Handlon Correctional Facility (MTU). Plaintiff sues Michigan Department of Corrections (MDOC) Director Patricia Caruso, IBC Warden Kenneth McKee, IBC Assistant Resident Unit Manager (ARUM) Lisa English, IBC Acting ARUM (unknown) Perry, RCF Warden Carmen Palmer, RCF ARUM Chris Bouck, MTU Warden John Prelesnik and MTU ARUM Dawn Lovett.

Plaintiff's complaint concerns his exposure to Environmental Tobacco Smoke (ETS). Plaintiff requested tobacco-free housing when he was transferred to IBC on December 29, 2005. He was placed with a non-smoking cell mate, but was in a housing unit with smokers. After he was placed on "unemployable status," he was moved to a cell with a smoker who allegedly smoked fifty non-filtered cigarettes a day. Plaintiff claims that Defendants McKee, English and Perry refused his requests to be moved to tobacco-free housing. He further contends that the no smoking policy was rarely enforced at IBC and that both prisoners and staff violated the policy. Plaintiff ultimately was placed in tobacco-free housing on June 19, 2006. Plaintiff requested a medical appointment because he was experiencing shortness of breath, burning sensation of the lungs, uncontrollable coughing and sneezing. On

> August 25, 2006, the doctor diagnosed Plaintiff with asthma and bronchitis and prescribed him medications for his condition.
>
> On October 17, 2006, Plaintiff was transferred to RCF. While at that facility, Plaintiff had a special accommodation notice which required him to be placed in a smoke-free environment. Plaintiff claims that prisoners smoked in the housing unit even though it was designated for non-smoking prisoners. Plaintiff claims that the smoke caused him to suffer nausea, respiratory complications and a burning sensation in his nasal cavities. Plaintiff further claims that Defendants Palmer and Bouck intentionally house smokers in areas designated for non-smokers when there are not enough non-smokers to fill bed space designated for non-smokers. According to Plaintiff, the no smoking policy was rarely enforced at RCF and Defendants made no attempt to remove prisoners found smoking in the smoke-free housing unit.
>
> Plaintiff was transferred to MTU on February 8, 2007. Despite his special accommodation, Plaintiff was placed in a housing unit with smokers. As a result of his exposure to high levels of ETS, Plaintiff requires prescription inhalers to assist with his breathing.
>
> Plaintiff alleges that all of the named Defendants were deliberately indifferent to his serious medical needs by placing him in housing units with smokers. Plaintiff claims that Defendants failed to enforce the no-smoking policy and failed to remove smoking prisoners from the non-smoking designated housing units. Plaintiff asserts that his continued exposure to ETS has exacerbated his medical condition, causing him pain and suffering. Plaintiff also alleges that Defendants Prelesnik and Lovett retaliated against him for filing grievances by transferring him to a facility that was not known to provide smoke-free housing.

Report and Recommendation at 3-5 (docket no. 43).

**II.    Legal Standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

2

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. Eighth Amendment claim regarding ETS

The Cruel and Unusual Punishments Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crime. Punishment

3

may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The clause therefore prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the infliction of serious pain. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

*Helling v. McKinney*, 509 U.S. 25 (1993), is the seminal Supreme Court case with respect to Eighth Amendment arising from ETS. In *Helling*, a prisoner sued prison officials pursuant to § 1983 claiming that his involuntary exposure to ETS from a cellmate posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The cellmate smoked five packs of cigarettes a day. *Id.* The Supreme Court affirmed the appellate court's decision remanding the case to the district court to allow the prisoner an opportunity to prove his case, i.e., the prisoner had to prove both the subjective and

4

objective elements necessary for an Eighth Amendment violation. *Id.* Relevant to the objective element was whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element was whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id.* at 36.

Courts have recognized two distinct types of ETS claims under the Eighth Amendment, "present injury claims" and "future injury claims." *Atkinson v. Taylor*, 316 F.3d 257, 273 (3rd Cir. 2003). Plaintiff alleges both types of claims in this action.

**1.     Present injury**

Defendants contend that plaintiff has failed to present sufficient evidence in support of his present injury claim. The court agrees. "A present injury claim alleges that exposure to ETS poses a risk to a prisoner's existing medical needs." *Id.* As in other Eighth Amendment claims, "a prisoner must allege a sufficiently serious medical need (the objective component) and deliberate indifference by prison officials in response (the subjective component). *Id.* "[M]ere exposure to Environmental Tobacco Smoke ("ETS"), without more, does not constitute a deprivation of a prisoner's Eighth Amendment rights." *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The issue in such cases is "whether the prisoners' pre-existing medical conditions are such that exposing them to ETS represents a serious health threat or constitutes mere discomfort." *Id.*

Plaintiff has a history of respiratory disease, specifically asthma, documented since at least July 2006. *See* docket no. 76-3. However, the records do not reflect that plaintiff suffered from serious symptoms or that his asthma was difficult to control. On July 2, 2006, plaintiff reported a burning sensation in his lungs and "uncontrollable coughing" after sneezing "since being

5

removed from second hand smoke cell environment." *See* docket no. 76-4.[1] On July 17, 2006, plaintiff complained to health care that he was "[b]eing denied medical treatment for symptoms related to exposure to second hand smoke." *Id.* On October 25, 2006, after his transfer to RCF, plaintiff reported that he used albuterol four times per week, had more problems in the summer months, and listed "Cig smoke" as a primary irritant. *See* docket no. 76-3. On January 31, 2007, plaintiff reported using albuterol 15 times a month and experiencing "nighttime symptoms" once per week. *Id.* On March 19, 2007, after his transfer to MTU, plaintiff reported that his asthma was controlled with inhalers and had more problems in the summer months. *Id.* On July 16, 2008 (eleven months after filing this action), plaintiff reported to the pulmonary chronic care clinic that his only symptom was shortness of breath three times a week. *Id.*

To rise to the level of a constitutional violation, a prisoner's exposure to smoke must cause more than mere discomfort or inconvenience. *Talal v. White*, 403 F.3d 423, 426 (6th Cir.2005). In the context of an Eighth Amendment claim, breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy arising from ETS have been construed as "objectively speaking, relatively minor." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). *See, e.g.*, *Oliver v. Deen*, 77 F.3d 156, 158-61 (7th Cir. 1996) (court concluded at summary judgment that an asthmatic prisoner failed to demonstrate that he had a serious medical need for a non-smoking environment even though his exposure to second-hand smoke (ETS) aggravated his condition, causing him to suffer chest pains, difficulty in breathing, dizziness, nausea and other signs of discomfort).

---

[1] Plaintiff alleged that he was moved to tobacco free housing on or about June 19, 2006. Compl. at ¶¶ 36 and 37.

Viewing the facts in the light most favorable to plaintiff, the court concludes that plaintiff has failed to demonstrate that his exposure to ETS posed a serious health threat sufficient to establish a claim for a present injury. Assuming that ETS was a primary irritant of plaintiff's asthma, the medical record reflects that he suffered from only a "relatively minor" aggravation of his asthma which caused him some discomfort. *See Henderson*, 196 F.3d at 846; *Oliver*, 77 F.3d at 158-61. Plaintiff has failed to demonstrate the objective prong of a present injury ETS claim. Accordingly, defendants are entitled to summary judgment on this claim.[2]

2. **Future injury**

Defendants also contend that plaintiff has failed to present sufficient evidence in support of his future injury claim. The court agrees. Establishing the objective component for an Eighth Amendment claim arising from future exposure to ETS,

> requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36. "[T]he subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct." *Id.* Prison officials' adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." *Id.*

While plaintiff has submitted articles and other documents discussing the adverse health consequences of second-hand smoke, plaintiff has presented no scientific or statistical

---

[2] In their brief, defendants assert that "[t]here is no evidence that Defendants were subjectively aware that Plaintiff had a serious medical need for a smoke-free environment." Defendants' Brief at 5. However, defendants have not provided any evidence to support this conclusory statement.

7

evidence to demonstrate that he is being exposed to unreasonably high levels of ETS or that the risk he has experienced violates contemporary standards of decency. Even if plaintiff had presented such objective evidence, his claim would fail for lack of evidence that defendants acted with deliberate indifference.

While this action was pending, the MDOC adopted a policy directive which prohibits smoking by offenders and MDOC employees and members of the public inside all MDOC buildings and within 100 feet of any entrance to those buildings. *See* MDOC Policy Directive 01.03.140 at ¶¶ G, J. (eff. Feb. 1, 2009). The adoption of this policy indicates that prison officials are not acting with deliberate indifference with respect to ETS. The MDOC's ban on all tobacco use effective in February 2009 "is evidence that [d]efendants and the Michigan Department of Corrections have taken this matter seriously." *King v. Sherry*, No. 2:07-cv-133, 2008 WL 4534416 at *1 (W.D. Mich. Sept. 29, 2008). Prior to that date, the MDOC had a non-smoking policy in place that prohibited smoking in all occupied buildings. *See* MDOC Policy Directive 01.03.140 (eff. April 24, 2006). Assuming that plaintiff was exposed to ETS due to the violation of either policy directive, "[i]t is well established that imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference." *Nali v. Michigan Department of Corrections*, No. 2:07-cv-255, 2009 WL 3052227 at *15 (W.D. Mich. Sept. 21, 2009), citing *Talal*, 403 F.3d at 427. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's Eighth Amendment claims.

B.      **Retaliation claim**

Plaintiff contends that Warden Prelesnik and ARUM Lovett retaliated against him by "transferring plaintiff to a worse living environment where smoke hovers." Compl. at ¶ 127. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

Defendants contend that plaintiff made only conclusory allegations that he was engaged in protected conduct. In his affidavit in opposition to defendants' motion, plaintiff states that he engaged in "protected conduct" by filing non-frivolous grievances as alleged in paragraphs 81 to 105 of his complaint. *See* Plaintiff's Aff. at ¶ 44 (docket no. 75). In ¶ 81 of his complaint, plaintiff refers to events that occurred after filing grievances against Warden Prelesnik and MTU's housing unit RUM and ARUS. Plaintiff has submitted a copy of the Step II response to a grievance filed at MTU regarding exposure to ETS. *See* grievance MTU 070300249003c (docket no. 76-10). Defendants did not reply to plaintiff's affidavit.

Defendants also contend that even if plaintiff was engaged in protected conduct and subjected to adverse action, he has failed to show that the actions taken by Warden Prelesnik and

9

RUM Lovett were motivated by his protected conduct. In his affidavit, plaintiff states that he had been housed at MTU for five weeks and had been issued a major misconduct ticket. Plaintiff's Aff. at ¶ 48. In addition, prior to his transfer, plaintiff had sent correspondence to Warden Prelesnik about the lack of grievance forms in the housing units and his failure to maintain smoke-free housing units. *Id.* at ¶ 49. According to plaintiff, Warden Prelesnik and RUM Lovett knew he had an MDOC Medical Special Accommodation Notice that required transfer to a smoke free environment, but they chose to transfer him "to the ICF facility that was known to be an open dorm setting." *Id.* at ¶ 50. Defendants did not file a reply to this affidavit.

Plaintiff's uncontested affidavit creates a genuine issue of fact as to the existence of protected conduct and whether his protected conduct could have been a motivating factor in defendants' decision to transfer him to another correctional facility, but it is not a factual issue material to a resolution of this matter. Under the facts of this case, plaintiff's transfer from MTU to another correctional facility did not constitute an adverse action sufficient to support a retaliation claim. "A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Jewell v. Leroux*, 20 Fed. Appx. 375, 378 (6th Cir. 2001). *See, e.g., Burton v. Houseworth*, No. 90-2096, 1991 WL 105756 at *2 (6th Cir. June 14, 1991) (rejecting a Michigan prisoner's claim for retaliatory transfer because prisoners do not have a constitutional or state-created right to be incarcerated at a particular facility). A prisoner has no constitutional right to be confined in a particular institution or to enjoy a certain classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("[w]hatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger

10

procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all"); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir.1986). Accordingly, the court should grant defendant Prelesnik's and Lovett's motion for summary judgment on the retaliation claim.

### C. Qualified Immunity

Finally, defendants assert that they are entitled to qualified immunity. However, they present no argument on this issue other than setting forth the legal standard applicable to determine the existence of qualified immunity and a conclusory statement that "[e]ven if Plaintiff has arguably stated a claim, Defendants are entitled to qualified immunity because the law was not clearly established." Defendants' Brief at 8. It is insufficient for defendants to cite law for the general proposition that qualified immunity exists and then conclusorily assert that they are entitled to it. *Malec v. Sanford*, 191 F.R.D. 581, 588 (N.D. Ill. 2000). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, defendants have waived the issue of qualified immunity.

### IV. Recommendation

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket no. 73) be **GRANTED** and this action dismissed.


Dated: January 19, 2010                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge

11

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).